UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X

SCOTT MULDOON,                                    **MEMORANDUM & ORDER**

        Plaintiff,                          19-cv-07236 (KAM)

    -against-

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

--------------------------------------X

**MATSUMOTO, United States District Judge:**

        Pursuant to 42 U.S.C. § 405(g), plaintiff Scott
Muldoon ("plaintiff"), appeals the final decision of the
Commissioner of Social Security ("defendant" or the
"Commissioner"), denying plaintiff's application for Disability
Insurance Benefits ("DIB") under Title II of the Social Security
Act (the "Act"), 42 U.S.C. §§ 301 *et seq.*, on the grounds that
plaintiff was not disabled within the meaning of the Act.

        On appeal, plaintiff asserts that the determination
that he was not disabled is not supported by substantial
evidence and suffers from numerous legal errors. (ECF No. 15,
Plaintiff's Memorandum of Law in Support of Plaintiff's Motion
for Judgment on the Pleadings ("Pl. Mem.") at 10.)

        Presently before the court is plaintiff's motion for
judgment on the pleadings, (ECF No. 14, Motion for Judgment on
the Pleadings), plaintiff's memorandum of law, (Pl. Mem.),

defendant's cross-motion for judgment on the pleadings (ECF No. 16, Cross Motion for Judgment on the Pleadings), and defendant's memorandum of law in support thereof. (ECF No. 17, Defendant's Memorandum of Law in Support of Defendant's Motion for Judgment on the Pleadings and in Opposition to Plaintiff's Motion for Judgment on the Pleadings ("Def. Mem.").) Also before the court are the parties' joint stipulation of facts detailing plaintiff's medical history and the administrative hearing testimony. (ECF No. 17-1, Joint Stipulation of Facts ("Stip.").)

For the reasons set forth below, the court GRANTS the plaintiff's motion for judgment on the pleadings, and DENIES Commissioner's cross-motion to the extent that the court vacates the Commissioner's decision and remands this matter for further proceedings consistent with this Memorandum and Order.

## BACKGROUND AND PROCEDURAL HISTORY

The court adopts the factual and procedural background set forth in the Administrative Transcript[1]; the Administrative Law Judge's July 26, 2019 decision (the "2019 ALJ Decision," Tr. 305-19), the Stip., and the parties' respective motions for judgment on the pleadings. This Memorandum and Order discusses

---

[1] Citations to the administrative record are indicated by the abbreviation "Tr."

only those facts relevant to the court's determination as set forth herein.

On May 23, 2013, the plaintiff filed an application for DIB Benefits. (Tr. at 12.) The plaintiff claimed he was disabled as a result of a left knee impairment and posttraumatic stress disorder. (*Id.* at 192.) Plaintiff's alleged disability onset date was May 1, 2012. (*Id.*) Plaintiff's application was denied on July 29, 2013. (*Id.* at 76-87.)

On August 6, 2013, plaintiff filed a written request for a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 89.) On December 11, 2014, ALJ Dina R. Lowey held a video hearing from New York, during which plaintiff appeared in Staten Island and was represented by an attorney. (*Id.* at 29.) Plaintiff and Rachel Ducan, a vocational expert ("VE"), testified at the hearing. (*Id.* at 28.)

In a decision dated February 23, 2015, the ALJ found plaintiff was not disabled (the "2015 ALJ Decision"). (Tr. 12-20.) Plaintiff thereafter requested a review of the 2015 ALJ decision with the Appeals Council, who declined to disturb the ALJ decision in a determination on August 4, 2016. (Tr. at 1) The plaintiff commenced an action in federal court for review of the decision. (Pl. Mem. At 1.) After plaintiff moved for judgment on the pleadings, the parties stipulated to a remand to an ALJ for further administrative proceedings to re-evaluate,

among other things, the severity, onset, and limiting factors of plaintiff's mental impairments. (Tr. at 389-92.) The District Court approved the remand on July 28, 2017. (*Id.* at 390.)

As the current case was pending on appeal, plaintiff protectively filed a subsequent application for DIB on April 24, 2017, citing PTSD and depression and an alleged onset date of November 30, 2016. (*Id.* at 396, 401.) The State agency found plaintiff was disabled beginning November 30, 2016. (*Id.*) On October 13, 2017, however, the Appeals Council vacated the decision, remanded the claim, and consolidated the claim with the initial application at issue here. (*Id.* at 397.)

On January 3, 2019, ALJ Dina R. Loewy held a video hearing from Jersey City, during which plaintiff was represented by an attorney. (*Id.* at 330.) During the hearing, the ALJ requested primary care provider records since 2015 and a pharmacy log. (*Id.* at 334.). ALJ Loewy then held another hearing on May 30, 2019 from New York, during which plaintiff was represented by an attorney and testified as to the limiting factors of his injuries. (*Id.* at 339.) VE Irene Montgomery also testified at the hearing. (*Id.*).

In a decision dated July 26, 2019, the ALJ again issued a written decision (the "2019 ALJ Decision") finding plaintiff was not disabled within the meaning of the Act at any time from the alleged onset date. (Tr. at 308-19.) On August

20, 2019, plaintiff appealed the ALJ's decision to the Appeals Council. (*Id.* at 696.) On December 13, 2019 the Appeals Council denied review of the ALJ's decision, rendering the ALJ's decision the final decision of the Commissioner. (*Id.* at 299.)

On December 26, 2019, plaintiff filed the instant action in federal court. (*See generally* ECF No. 1, Complaint ("Compl.").) On January 7, 2020, this court issued a scheduling order. (ECF No. 5, Scheduling Order.) Commissioner requested and was granted several extensions of time to file, in addition to a series of stays due to the impact of the COVID-19 pandemic. (ECF Nos. 7, 8, 9, 10; Dkt. Orders dated 3/24/2020, 4/15/2020, 5/15/2020, 6/16/2020.) This court issued an updated scheduling order on July 14, 2020. (Dkt. Order 7/14/2020.) Commissioner requested one additional extension of time to file, which the court granted. (ECF No. 13, Dkt. Order 11/24/2020.)

On December 14, 2020, plaintiff filed his motion and memorandum of law in support of plaintiff's motion for judgment on the pleadings. (ECF Nos. 14 and 15.) On that same day, defendant filed his cross-motion and memorandum of law in support of defendant's cross-motion for judgment on the pleadings and in opposition of plaintiff's motion for judgment on the pleadings. (ECF Nos. 16 and 17.)

## LEGAL STANDARD

Unsuccessful claimants for disability benefits under

the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow."  42 U.S.C. §§ 405(g), 1383(c)(3).  A district court, reviewing the final determination of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998).

A district court may set aside the Commissioner's decision only if the factual findings are not supported by substantial evidence or if the decision is based on legal error. *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008). "Substantial evidence is more than a mere scintilla," and must be relevant evidence that a "reasonable mind might accept as adequate to support a conclusion."  *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (citing *Richardson v. Perales*, 420 U.S. 389, 401 (1971)) (internal quotation marks omitted).  If there is substantial evidence in the record to support the Commissioner's factual findings, those findings must be upheld. 42 U.S.C. § 405(g).  Inquiry into legal error "requires the court to ask whether 'the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the

beneficent purposes of the [Social Security] Act.'" *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). The reviewing court does not have the authority to conduct a *de novo* review, and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

To receive disability benefits, claimants must be "disabled" within the meaning of the Act. *See* 42 U.S.C. §§ 423(a), (d). A claimant is disabled under the Act when he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which as lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Shaw v. Chater*, 221 F.3d 126, 131-32 (2d Cir. 2000). The impairment must be of "such severity" that the claimant is unable to do his previous work or engage in any other kind of substantial gainful work. 42 U.S.C. § 423(d)(2)(A). "The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . . ; and (4) the claimant's educational background, age, and work experience.'" *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*,

174 F.3d 59, 62 (2d Cir. 1999)).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether the claimant's condition meets the Act's definition of disability. *See* 20 C.F.R. § 404.1520. This process is essentially as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

*Burgess*, 537 F.3d at 120 (internal quotation marks and citation omitted); *see also* 20 C.F.R. § 404.152(a)(4).

During this five-step process, the Commissioner must consider whether "the combined effect of any such impairment . . . would be of sufficient severity to establish eligibility for Social Security benefits." 20 C.F.R. § 404.1523. Further, if the Commissioner does find a combination of impairments, the combined impact of impairments, including those that are not severe (as defined by the regulations), will be considered in the determination process. 20 C.F.R. § 416.945(a)(2). At steps one through four of the sequential five-step framework, the claimant bears the "general burden of proving . . . disability."

*Burgess*, 537 F3.d at 128.  At step five, the burden shifts from the claimant to the Commissioner, requiring that the Commissioner show that, in light of the claimant's RFC, age, education, and work experience, the claimant is "able to engage in gainful employment within the national economy."  *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

Lastly, federal regulations explicitly authorize a court, when reviewing decisions of the SSA, to order further proceedings when appropriate.  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Remand is warranted where "there are gaps in the administrative record or the ALJ has applied an improper legal standard."  *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (internal quotation marks omitted).  Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision.  *Pratts*, 94 F.3d at 39.  However, if the record before the court provides "persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose," the court may reverse and remand solely for the calculation and payment of benefits.  *See, e.g.*, *Parker v. Harris*, 626 F.2d 225,

235 (2d Cir. 1980); *Kane v. Astrue*, 942 F Supp. 2d 301, 314 (E.D.N.Y. 2013).

**DISCUSSION**

## I.   The ALJ's Disability Determination

Using the five-step sequential process to determine whether a claimant is disabled as mandated by the regulations, the ALJ determined at step one that the plaintiff engaged in substantial gainful activity in 2015 and 2016, after the alleged onset date of May 1, 2012.  (Tr. at 310.)  At step two, the ALJ found that plaintiff suffered from severe impairments of major depressive disorder, post-traumatic stress disorder, adjustment disorder, anxiety disorder, substance abuse disorder, left-knee disorder, sleep apnea, hearing loss, and obesity.  (*Id.* at 311) The ALJ found that plaintiff's medically determinable impairments significantly limited plaintiff's ability to perform basic work activities.  (*Id.*)

At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals Medical Listing 1.02 (major disfunction of a joint), 2.10 (hearing loss not treated with cochlear implant), 3.02 (chronic respiratory disorders), 3.03 (asthma), 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), or 12.15 (trauma- and stressor-related disorders).  (*Id.* at 311-12, 20 C.F.R. §§ 404.1520(d),

404.1525, 404.1526, 416.920(d), 416.925, 416.926.)

Specifically, the criteria set forth in Listing 1.02 were not satisfied because plaintiff had a normal gait without use of an assistive device. (Tr. at 311.) Listing 2.10 was not satisfied because the record did not show sufficient hearing loss. (*Id.*). Listings 3.02 and 3.03 were not met because there was no evidence of chronic impairment meeting the criteria in the listings. (*Id.*)

Moreover, the criteria set forth in paragraph B of Medical Listings 12.04, 12.06, or 12.15 were not satisfied because the ALJ found that plaintiff had moderate (not marked or extreme) limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. (*Id.* at 312-13.) In making this determination, the ALJ referenced, *inter alia*, plaintiff's consultative examination with Dr. Lefkowitz on June 11, 2013 (Exhibit 2F), plaintiff's mental status examinations from treating psychiatrists in 2013 and 2014 (Exhibits 1F, 5F), and mental status reports his most recent treating psychiatrist, Dr. Kharitonova, from 2016 through 2019 (Exhibits 14F, 16F, 22F). (Tr. at 313.) Additionally, the ALJ found that the criteria set forth in paragraph C of Medical Listings 12.04, 12.06, or 12.15 were not satisfied based on the evidence in the record. (*Id.*)

At step four, the ALJ found that plaintiff had the
Residual Function Capacity ("RFC") to perform medium work, but
with the following limitations: (1) the ability to perform only
simple, routine, and repetitive tasks; (2) the ability to
perform low-stress jobs, requiring only occasional decision-
making and only occasional changes in work setting; (3) the need
to have only occasional interaction with the public or
coworkers; (4) the need to avoid all exposure to hazardous
machinery, unprotected heights, or operational control of moving
machinery; (5) the need to avoid driving a motor vehicle; (6)
the need to perform jobs not requiring frequent or complex
verbal communications, no high ambient noise, and only moderate
office noise.  (*Id.* at 313-14.)

The ALJ concluded that although plaintiff's medically
determinable impairments could reasonably be expected to cause
the alleged symptoms, the plaintiff's testimony concerning the
intensity, persistence, and limiting effects of these symptoms
were not entirely consistent with the medical evidence and other
evidence in the record.  (*Id.* at 314.)  The ALJ compared
plaintiff's testimony to evidence of the plaintiff's normal
gait, the responsiveness of his sleep apnea to treatment,
medical records showing plaintiff's mental symptoms were
relatively benign, and plaintiff's ability to maintain work
activity in a skilled position for two years, in 2015 and 2016,

"despite his ongoing symptoms and struggles." (*Id.* at 314-17.)
The ALJ concluded plaintiff was unable to perform any past
relevant work as an assembler in metal buildings, which
consisted of skilled work while plaintiff's RFC only allows for
unskilled work. (*Id.* at 318.)

At step five, the ALJ found that, based on plaintiff's
age, education, work experience, and residual function capacity,
there are jobs that exist in significant numbers in the national
economy that plaintiff can perform (20 C.F.R. 404.1569,
4014.1569(a), 416.969, and 416.969(a)). (*Id.*) The vocational
expert testified that plaintiff would be able to perform the
requirements of representative occupations such as laundry
laborer, box maker, and change house attendant night cleaner.
(*Id.* at 319.) Thus, the ALJ concluded that plaintiff was not
disabled within the meaning of the act, as defined in 20 C.F.R.
§ 404.1520(g), since May 1, 2012, through the date of the
hearing. (*Id.*)

## II.  **Treating Physicians' Opinions**

Plaintiff challenges the ALJ's RFC determination based
on the weight the ALJ assigned to the treating medical sources'
opinions. (Pl. Mem. at 12-18.) The ALJ gave "significant
weight" to the opinions of the State Agency psychiatric
consultants, "some weight" to the opinions of the internist
consultative examiners, Drs. Govindaraj and Ducena, "little

weight" to plaintiff's treating psychiatrist, Dr. Kharitanova,

and "little weight" to the assessment of plaintiff's treating

physician, Dr. Flynn. (Tr. at 317-18.) Plaintiff contends that

the ALJ did not give appropriate weight to his treating

physicians, and if she had, she would have determined plaintiff

was unable to meet the demands of skilled or unskilled work.

## A. Legal Standard

Under the treating physician rule, a "treating

source's opinion on the issue of the nature and severity of a

[claimant's] impairment(s) will be given 'controlling weight' if

the opinion is 'well-supported by medically acceptable clinical

and laboratory diagnostic techniques and is not inconsistent

with the other substantial evidence in the case record.'" *Greek*

*v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v.*

*Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)); 20 C.F.R. §§

404.1527(c)(2).[2] *See Molina v. Colvin*, No. 13-cv-4701, 2014 WL

3925303, at 2 (S.D.N.Y. Aug. 7, 2014) (finding the opinion of a

treating physician "need not be given controlling weight where

[it is] contradicted by other substantial evidence in the

---

[2] Because plaintiff's initial application for disability and disability
insurance benefits, which are the subject of this action, was filed before
March 27, 2017, the recent changes reflected in C.F.R. § 404.1520c do not
apply, and under C.F.R. § 404.1527(a)(2)(c), the treating source's opinion is
generally assigned added or possibly controlling weight. Although plaintiff
filed his second disability application on April 24, 2017, after the changes
to the rule went into effect, his second claim was consolidated with the
initial claim and evaluated based on an alleged disability date of May 1,
2012. Thus, the Court finds that the treating physician analysis should be
applied to the consolidated claim.

record").

An ALJ who does not accord controlling weight to the treating physician's medical opinion must consider various factors to determine how much weight to give to the opinion, including: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the amount of medical evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; and (iv) whether the opinion is from a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) (quoting *Burgess*, 537 F.3d at 128); *see* 20 C.F.R. § 404.1527(c)(2); *see also Adukpo v. Berryhill*, 19-cv-2709 (BMC), 2020 WL 3410333, at 1 (E.D.N.Y. Jun. 22, 2020).

"The ALJ must then 'comprehensively set forth his reasons for the weight assigned to a treating physician's opinion.'" *Cichocki v. Astrue*, 534 F. App'x. 71, 74 (2d Cir. 2013) (quoting *Burgess*, 537 F.3d at 129). The regulations also require that the ALJ set forth "good reasons for not crediting the opinion of the treating provider." *Cervini v. Saul*, 17-cv-2128 (JMA), 2020 WL 2615929, at 5 (E.D.N.Y. May 21, 2020) (citing *Schaal*, 134 F.3d at 496, 503 (2d Cir. 1998)). Good reasons "reflect in substance the factors as set forth in [Section] 404.1527(d)(2), even though the ALJ declines to examine the factors with explicit reference to the regulation."

*Abate v. Comm'r*, 18-cv-2040 (JS), 2020 WL 2113322, at 4
(E.D.N.Y. May 4, 2020); *Atwater v. Astrue*, 512 F. App'x 67, 70
(2d Cir. 2013) ("We require no such slavish recitation of each
and every factor where the ALJ's reasoning and adherence to the
regulation are clear.")  Further, "[t]he failure to provide
'good reasons for not crediting the opinion of a claimant's
treating physician is a ground for remand.'"  *Greek*, 802 F.3d at
375 (quoting *Burgess*, 537 F.3d at 129-30).

**B. Dr. Mary Irene Flynn, Orthopedic Treating Physician**

         In assessing the extent of plaintiff's physical
disabilities due to his knee injury, the ALJ assigned "little
weight" to the assessment submitted by Dr. Flynn, plaintiff's
treating physician, which found that plaintiff could lift no
more than 20 pounds occasionally and no more than 10 pounds
frequently.  (Tr. at 317, 904.)  Dr. Flynn also found plaintiff
had reduced range of motion and that trace swelling existed in
plaintiff's knee.  (*Id.*)  The ALJ acknowledged that Dr. Flynn
was a treating physician, but noted that plaintiff only saw Dr.
Flynn once, in August 2017, and that plaintiff did not pursue
any treatment thereafter.  (*Id.* at 315.)  The ALJ also reasoned
Dr. Flynn's opinion was "inconsistent with the rather minimal
treatment for the left knee since 2003, and the rather minimal
clinical deficits found in the record," as established in two
other medical opinions noted below.  (*Id.* at 317-318.)

The ALJ instead chose to assign "some weight" to the opinion of Dr. Govindaraj issued on July 1, 2013 (Ex. 3F) and the opinion of Dr. Ducena issued on August 20, 2017 (Ex. 19F), both of whom found that plaintiff had no significant physical restrictions. (Tr. at 317.) Based on one examination with the plaintiff on August 20, 2017, Dr. Ducena opined that plaintiff has "no limitation to sitting, standing, walking, lying down, hearing or speaking," and had "no weight restriction," partly because plaintiff "did not use any devices to assist with ambulation . . . was able to move around freely . . . [and] did not appear to be in any apparent distress." (Tr. at 886-87.) The ALJ therefore concluded there was "no evidence of instability or . . . [marked or disabling] deficit in the left knee," and therefore did not impose weight restrictions in its determination of plaintiff's RFC. (*Id.* at 316.) Though the ALJ admitted the limited restrictions found in the two non-treating opinions was "inconsistent with the history of injury to the left knee," the ALJ determined that plaintiff suffered from no marked or disabling limitations consistent with "the largely normal clinical findings documented by both examiners, and by the rather minimal treatment for the knee since the injury in 2003." (Tr. at 317.)

Where a plaintiff's medical sources have differing RFC opinions, "[a]n ALJ's failure to reconcile such materially

divergent RFC opinions of medical sources is [ ] a ground for remand." *Cabassa v. Astrue*, No. 11-cv-1449, 2012 WL 2202951, at 7 (E.D.N.Y. Jun. 13, 2012). This is especially true where the ALJ discounts the opinion of the treating physician. *See Kennedy v. Astrue*, 343 F. App'x 719, 721 (2d Cir. 2009) (summary order) ("Where an ALJ fails properly to acknowledge [the treatment physician rule] or to provide 'good reasons' for the weight given to the treating physician's opinion, we do not hesitate to remand." (citation omitted)).

Moreover, when a plaintiff pursues a conservative course of treatment, the ALJ may not "impose their [own] notion that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered." *Shaw v. Carter*, 221 F.3d 126, 134-35 (2d Cir. 2000) (holding district court improperly characterized plaintiff's choice to pursue physical therapy, instead of surgery, as substantial evidence plaintiff was not disabled). A minimal course of treatment "is not the overwhelmingly compelling type of critique that would permit the Commissioner to overcome an otherwise valid medical opinion." *Id.* at 135. "[A] circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion." *Wagner v. Secretary of Health and Human Servs.*, 906 F.2d 856, 862 (2d Cir. 1990). The court notes that a

plaintiff's limited course of treatment is not irrelevant in making an RFC determination. *See Navan v. Astrue*, 303 F. App'x 18, 20 (2d Cir. 2008) (summary order) (finding claims of total disability were undermined by failure to seek regular treatment for allegedly disabling condition). But the question presented here is whether the limited course of treatment sufficiently justifies assigning little weight to a treating physician's opinion.

The ALJ committed legal error by affording too little weight to Dr. Flynn's treating opinion for two reasons, which, taken together, justify a remand. First, the ALJ incorrectly "imposed their own notion" and medical judgment, over that of the treating physician, by finding that the severity of plaintiff's physical impairment correlated with the minimal course of treatment plaintiff pursued. *See Shaw*, 221 F.3d at 134-35. The ALJ expressly noted Dr. Flynn's opinion was inconsistent with plaintiff's "rather minimal treatment for the left knee since 2003." (Tr. at 317-18.) The ALJ accordingly put substantial weight on the fact that plaintiff "was not a good candidate for surgery," and that "the record show[ed] no significant treatment or follow-up for years." (Tr. at 315.) The ALJ also noted plaintiff received no treatment after Dr. Flynn prescribed plaintiff physical therapy in 2017. (*Id.*)

But the ALJ did not acknowledge that "the severity of

a physical impairment" does not necessarily directly correlate with the "intrusiveness of the medical treatment ordered." *Shaw*, 221 F.3d at 134-35. Plaintiff, for one, had good reason to not pursue knee surgery, as his doctor had advised him it would cause "six to eight months of painful rehabilitation and it would be unclear how much it would actually help [plaintiff's] situation." (Tr. at 352.) Plaintiff also noted that he "tried physical therapy but it didn't really do anything." (*Id.*) It is also notable that plaintiff's days while unemployed typically consist of "read[ing], watch[ing] TV," and if he feels up to it "help[ing] out [his] wife with things that [he] can." (*Id.* at 346.) It is thus unsurprising that plaintiff would have opted against a painful surgery or physical therapy regimen, given the lack of physical burdens in his day-to-day routine and the limited outlook for success. Therefore, the ALJ committed legal error by inferring Plaintiff's choice to forego treatment served as substantial evidence that Plaintiff was not physically impaired, in direct contrast with Second Circuit precedent. *See Shaw*, 221 F.3d at 134-35. The ALJ's limited commentary on plaintiff's lack of intrusive treatment is not the type of "overwhelmingly compelling" critique to justify her refusal to assign significant weight to the treating physician's opinion. *Wagner*, 906 F.2d at 862.

In light of the improper weight afforded to
plaintiff's minimal treatment plan, the ALJ did not sufficiently
reconcile the materially divergent opinions of Dr. Flynn with
that of Dr. Govindaraj, or that of Dr. Ducena, to justify so
heavily discounting the opinion of the treating physician. *See*
*Kennedy*, 343 F. App'x at 721. As to Dr. Giovindaraj, who found
that plaintiff had a "normal gait," (Tr. at 315.), the ALJ did
not account for the extent to which plaintiff's knee condition
could have worsened between June 2013 and August 2017. The
failure is notable because in August 2017, plaintiff stated his
knee pain had "resurfaced and increased in intensity" over the
past year, such that "now he cannot put pressure on the knee or
stand for a long period of time." (Tr. at 867.) Plaintiff also
noted his continued knee pain and discomfort from walking or
standing for extended periods of time at his Oral Hearing in May
2019. (Tr. at 353-54.) Although the medical record may provide
reasons for favoring Dr. Giovindaraj's opinion -- especially for
the period prior to 2017 -- the ALJ must provide good reasons
for doing so, with reference to specific elements of the medical
record. As noted above, plaintiff's lack of intrusive treatment
since the injury is not a sufficient reason to reconcile the
discrepancy. Thus, the ALJ should provide good reasons why a
one-time medical opinion from 2013 was afforded more weight than
a treating physician's opinion from 2017 –- even for making a

disability determination which includes a period after 2017 --
despite the fact that the knee injury appears to have worsened
between the two visits.

As to Dr. Ducena's opinion, the ALJ failed to
reconcile the opinion with Dr. Flynn's, and inconsistently
applied the ALJ's own reasoning in prioritizing the opinion over
that of Dr. Flynn.  While acknowledging Dr. Flynn was a treating
physician, the ALJ specifically noted that Dr. Flynn "saw the
claimant only once."  (Tr. at 317.)  To be sure, one of the
factors in determining whether to assign controlling to a
treating physician includes "the frequency of examination and
the length, nature, and extent of the treatment relationship."
*Burgess*, 537 F.3d at 128.  Dr. Flynn's opinion may accordingly
be afforded less weight than would be the case if plaintiff had
visited the doctor on multiple occasions.  But the record
indicates plaintiff only visited with Dr. Ducena once as well,
in the same month in which plaintiff visited Dr. Flynn.
Meanwhile, Dr. Ducena and Dr. Flynn reached opposite opinions as
to the extent of plaintiff's knee injury.  Dr. Flynn found
plaintiff can only occasionally carry more than 20 pounds, and
can frequently only carry 10 pounds.  (Tr. at 851.)  In
contrast, Dr. Ducena stated plaintiff had "no weight
restriction."  (Tr. at 887.)  Such materially divergent opinions
could prove dispositive as to whether plaintiff's is considered

disabled under the Act by directly influencing plaintiff's RFC determination. *See* 20 C.F.R., Part 404, Subpart P, Appendix 2, Rule 202.06; (*See* Pl. Mem. At 16.)

But the ALJ did not meaningfully reconcile the discrepancies between the opinions of Drs. Flynn and Ducena, or adequately develop the record by ordering additional examination or asking for clarification from either doctor. Notably, the ALJ denied plaintiff's request for another examination to reconcile the differences between the opinions. (Tr. at 317 n.1.) The ALJ must, however, provide better reasons for the scant weight accorded to Dr. Flynn's opinion, with reference to specific elements of the medical record. This could include, as plaintiff requested, the ALJ ordering another medical examination to investigate the discrepancies between Dr. Flynn's opinion and Dr. Ducena's opinion, or a request for clarification from the doctors. *See Lazo-Espinoza v. Astrue*, 10-cv-2089 (DLI), 2012 WL 1031417, at 13 (E.D.N.Y. Mar. 27, 2012) ("[T]he ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly."). As noted above, plaintiff's lack of intrusive treatment alone is not a good reason to de-emphasize the opinion of a treating physician.

"An ALJ's failure to reconcile . . . materially divergent RFC opinions of medical sources is [ ] a ground for

remand." *Cabassa*, 2012 WL 2202951, at 7. "Where an ALJ fails properly . . . to provide 'good reasons' for the weight given to the treating physician's opinion, we do not hesitate to remand." *See Kennedy*, 343 F. App'x at 721 (summary order) (citations omitted). Here, the ALJ incorrectly relied solely on plaintiff's minimal course of treatment when assigning less weight to Dr. Flynn's treating opinion than to the opinions of Dr. Ducena and Dr. Giovindaraj. The failure is especially notable as the ALJ herself acknowledged that the opinions of Dr. Ducena and Dr. Giovindaraj were "inconsistent" with the medical record as a whole. (Tr. at 317.) On remand, the ALJ must reevaluate the weight assigned to Dr. Flynn's opinion, or to provide good reasons as to why Dr. Flynn's treating opinion should be essentially rejected.

### C. Dr. Anne Kharitanova, Treating Psychiatrist

In assessing the extent of plaintiff's mental disabilities, the ALJ assigned "little weight" to the assessment submitted by Dr. Kharitanova, plaintiff's treating psychiatrist, who found that plaintiff has marked and extreme limitations across numerous areas of mental functioning. (Tr. at 317, 287.) The ALJ reasoned that Dr. Kharitanova's assessment was "inconsistent with her own GAF [Global Assessment of Functioning] scores," which fell within the moderate range. (Tr. at 317.) The ALJ also noted Dr. Kharitanova's series of

findings from 2014 to 2019, which "recorded some consistent clinical deficits, including reduced attention and concentration, constricted affect, and a sad and/or anxious mood," were inconsistent with her other findings of a "normal . . . cooperative attitude, normal speech, coherent thought processes, no hallucinations or suicidal/homicidal ideation, and fair insight and judgment." (*Id.*)  The ALJ also cited plaintiff's work in 2015 and 2016 as inconsistent with Dr. Kharitanova's findings. (*Id.*)  The ALJ, moreover, only briefly discussed Dr. Kharitanova's more recent findings, after the 2014 assessment, which found plaintiff's concentration, cognitive attention, and recent memory were abnormal. (*See, e.g.,* Tr. at 916.)  The ALJ acknowledged those opinions but discounted their weight due to Dr. Kharitanova's other more benign findings. (Tr. at 317.)

The ALJ instead afforded "significant weight" to the opinions of the State Agency psychiatric consultants, both of whom found that plaintiff had no more than moderate mental limitations. (*Id.*)  The ALJ reasoned the opinions were consistent with the findings documented by the psychiatric consultative examiner, Dr. Lefkowitz, who found in June 2013 that plaintiff's prognosis was "fair with adequate treatment," even though plaintiff told Dr. Lefkowitz that he stopped work because "he cannot be around people or concentrate." (*Id.* at

257-58.)  The ALJ also noted the consultative examinations were consistent with plaintiff's return to work as a skylight installer in 2015 and 2016.  (*Id.*)  The ALJ concluded that plaintiff was not disabled within the meaning of the Act because the state psychiatric opinions, and the record, supported a finding that plaintiff suffered from only moderate mental limitations.

The ALJ committed legal error by failing to consider the *Burgess* factors such as the length, frequency, nature or extent of Dr. Kharitanova's relationship with the plaintiff, and by failing to provide a persuasive rationale for the little weight given to the opinions Dr. Kharitanova provided from 2014 through 2019.  *See Burgess,* 537 F.3d at 128.  Most notably, the ALJ's need to take into account the length of the treatment relationship and frequency of the examinations, "is of heightened importance" where the claimed impairments include: "depression . . . panic disorder, and generalized anxiety disorder," as is the case here.  *Avate v. Comm'r*, 18-cv-2040 (JS), 2020 WL 2113322, at 4 (E.D.N.Y. May 4, 2020) (internal citations omitted); *see Syska v. Saul*, 19-cv-7212 (KAM), 2021 WL 2190986, at 6 (E.D.N.Y. May 31, 2021).

Here, plaintiff started visiting Dr. Kharitanova in August 2014, and saw her on several occasions during 2014.  (Tr. at 315.)  Plaintiff then visited Dr. Kharitanova in January

2015, before taking a break from treatment until March 2016. (*Id.* at 316.)  The record then demonstrates that plaintiff visited Dr. Kharitanova on several occasions in 2016, 2017, 2018, and 2019.  (*Id.* at 316.)  Indeed, the ALJ acknowledged in her decision that plaintiff "sees his psychiatrist once per month."  (*Id.* at 314.)  Plaintiff's consistent and long-tenured relationship with Dr. Kharitanova with respect to his mental impairments required the ALJ to give Dr. Kharitanova's opinions "heightened importance," because this case involves depression, anxiety, and trauma.  *See Avate*, 2020 WL 2113322, at 4. Moreover, "[i]t is well established that the ALJ should not rely on a consultive examiner's opinions after a single examination over a treating physician".  *Syska*, 2021 WL 2190986, at 6 (citing *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990)).  Dr. Kharitanova has considerably more insight into plaintiff's symptoms and related limitations from her years-long treating relationship than Dr. Lefkowitz, or the other state consultative examiners, do from a one-time examination of plaintiff. Accordingly, there is a presumption that Dr. Kharitanova's opinions should be accorded more weight than that of the consultive psychiatric examiners.

Rather than conduct a thorough investigation into Dr. Kharitanova's detailed findings over a five-year period, however, the ALJ primarily referred to Dr. Kharitanova's

response to a 2014 questionnaire.  (Tr. at 317.)  The ALJ then
offered conclusory statements that Dr. Kharitanova's more recent
findings from 2014 through 2019 were internally ambiguous and
were inconsistent with the medical record and plaintiff's work
history.  (*Id.*)  The ALJ ascribed Dr. Kharitanova's findings
little weight, without thoroughly discussing the implications of
Dr. Kharitanova's more recent findings.  (*Id.*)

　　　　The *Burgess* factors, however -- most notably the
length and frequency of the relationship -- point strongly
towards the ALJ providing a higher level of weight and
examination to Dr. Kharitanova's findings.  Therefore, the ALJ
committed error by failing thoroughly to examine the many pages
of findings Dr. Kharitanova provided between 2014 and 2019.
Although the ALJ described two inconsistencies to justify
reducing the weight Dr. Kharitanova's findings relative to those
of the consultative examiners, the court does not find that
substantial evidence justifies ascribing Dr. Kharitanova's
findings so little weight.

　　　　First, the ALJ discounted Dr. Kharitanova's
qualitative findings partly because they conflicted with the
relatively moderate Global Assessment of Functioning ("GAF")
score Dr. Kharitanova assigned to plaintiff in 2014.  (Tr. at
317.)  But as the Second Circuit has observed, several district
courts in this circuit have "questioned" the proposition that "a

GAF [score] generally provides a reliable basis for disability determinations." *Rock v. Colvin*, 628 F. App'x 1, 4 n.3 (2d Cir. 2015) (collecting cases).  One such court noted, following the removal of the GAF scale from the *Diagnostic and Statistical Manual of Mental Disorders*, that the SSA issued a bulletin on July 31, 2013 observing that "there is no way to standardize measurement and evaluation" in generating GAF scores, and "the GAF score is not designed to predict outcomes, and the scores are so general that they are not useful without additional supporting description and detail." *Mainella v. Colvin*, No. 13-CV-2453, 2014 WL 183957, at 5 (E.D.N.Y. Jan. 14, 2014).  In light of these problems, the SSA has "instruct[ed] ALJs to treat GAF scores as opinion evidence; the details of the clinician's description, rather than a numerical range, should be used." *Id.* (citation omitted).  Thus, GAF scores have limited evidentiary value, and alone do not serve as substantial evidence to reduce the weight ascribed to the treating psychiatrist's findings.

The moderate GAF score and assessment cited by the ALJ, moreover, was completed in 2014, and therefore does not incorporate Dr. Kharitanova's treating opinion given the benefit of five additional years of treatment.  (Tr. at 295.)  As noted above, however, the ALJ has an "affirmative duty to seek out more information from the treating physician and to develop the

administrative record accordingly." *See Lazo-Espinoza*, 2012 WL
1031417, at 13.  The ALJ could have requested Dr. Kharitanova to
complete another questionnaire, or provide an updated GAF score,
based on years of additional treatment, but failed to do so.
The failure is especially noteworthy as the Commissioner's
regulations note that the "level of [mental] functioning may
vary considerably over time," and accordingly "it is vital to
obtain evidence from relevant sources over a sufficiently long
period." *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, §
12.00D2.  Accordingly, the court is not persuaded that a GAF
score and assessment from 2014, which may or may not align with
Dr. Kharitanova's more recent qualitative findings, provide
substantial evidence to essentially reject Dr. Kharitanova's
informed treating opinion.  The ALJ must seek out and evaluate
more recent information from Dr. Kharitanova if the ALJ intends
to rely on the 2014 GAF score in her assessment.

The ALJ also relies on plaintiff's return to work from
2015 to 2016 as evidence that his mental impairments are only
moderate.  To be sure, plaintiff's activities during the alleged
disability period are not irrelevant in the determination of the
severity of a mental impairment. *See Cichocki v. Astrue*, 729
F.3d 172, 178 (2d Cir. 2013) (finding that ALJ properly relied
on claimant's reported daily activities in concluding that the
claimant could perform some work).  Though it is possible that

plaintiff's work history may provide evidence to support a finding that plaintiff was not disabled in 2015 and 2016, the ALJ's reasoning does not clearly support that plaintiff was not disabled *during any other period*. Notably, the ALJ ostensibly did not ascribe any weight to the fact that plaintiff lost the job in question in 2016 after an on-the-job accident that plaintiff acknowledges "was . . . my fault because I hadn't done something correctly and I can't focus on things." (Tr. at 345.) Specifically, plaintiff "forgot[] to install some fasteners" which caused a "skylight [to] partially collapse[]" and nearly seriously injure two people. (*Id.* at 782.) Plaintiff also stated that he could not stay in the job because "mentally it was having too much of a toll," that he "couldn't function," and he only attempted the job due to financial desperation after his initial disability appeal was denied. (*Id.* at 345.) The ALJ, however, did not discuss this evidence, but rather prioritized the mere fact of plaintiff's work history over the opinion of the treating psychiatrist.

This court acknowledges that the Commissioner is ordinarily afforded substantial deference in reviewing whether there is substantial evidence to support its decision, and it is not the duty of the court to weigh the evidence in the record. *See McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (noting "[i]f the evidence is susceptible to more than one rational

interpretation, the Commissioner's conclusion must be upheld"). Here, however, the evidence -- which suggests plaintiff's mental impairments may have forced him to stop working -- required the ALJ to more thoroughly discuss why she largely ignored the findings of the treating psychiatrist from 2014 through 2019, while prioritizing work history evidence from 2015 and 2016 that is plainly susceptible to competing interpretations. The court again emphasizes that the Commissioner's regulations state that the "level of [mental] functioning may vary considerably over time," and suggest the ALJ should examine longitudinal evidence from relevant sources. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00D2. The ALJ, accordingly, must consider other evidence and thoroughly explain, among other things, whether plaintiff's work history from 2015 and 2016 serves as evidence of plaintiff's lack of mental disability in the years since plaintiff stopped working in 2016. On remand, the ALJ must provide a more thorough explanation as to why ambiguous work history evidence should take priority over a treating psychiatrist's findings from a five-year course of consistent treatment.

Finally, the ALJ's limited review of Dr. Kharitanova's medical findings since 2014 provides little confidence that the ALJ thoroughly examined the entirety of Dr. Kharitanova's records when choosing to afford them little weight. The ALJ

merely implied Dr. Kharitanova's recent findings were internally
ambiguous, by briefly describing its mixture of positive
findings and negative findings.  (Tr. at 317.)  On remand, the
ALJ should more thoroughly and clearly explain Dr. Kharitanova's
findings, and discuss why, taken as a whole, the purported
ambiguities preclude ascribing them substantial weight in the
disability determination.  Moreover, if necessary, the ALJ has
"an affirmative duty to seek out more information" from Dr.
Kharitanova to better address any purported ambiguities in her
findings.  *See Lazo-Espinoza*, 2012 WL 1031417, at 13.  The ALJ
should consider the *Burgess* factors, such as the length,
frequency, nature or extent of plaintiff's relationship with
this mental health professional.  *See Burgess v. Astrue*, 537
F.3d 117, 128 (2d Cir. 2008); *Rasin v. Comm'r of Soc. Sec.*, No.
18CV06605KAMLB, 2020 WL 3960516, at 14 (E.D.N.Y. July 13, 2020).
When the ALJ considers the length of the treatment relationship
and frequency of the examination, she should also take into
account the "evidence supporting its satisfaction" where the
claimed impairments include: "depression, bipolar disorder,
panic disorder, and generalized anxiety disorder," as appears to
be the case here.  *Abate v. Comm'r of Soc. Sec.*, No. 18-CV-2040
(JS), 2020 WL 2113322, at *1 (E.D.N.Y. May 4, 2020)

     The court does not affirmatively hold that Dr.
Kharitanova's existing findings require a finding of disability,

but, rather, that the ALJ has an affirmative duty to more thoroughly develop the record regarding plaintiff's mental impairments, and, presumably, apply additional weight to Dr. Kharitanova's treatment or explain why she does not.

Because the evidence that purportedly contradicted Dr. Kharitanova's opinions was neither substantial, nor properly characterized, and because "the ALJ should not rely on a consultive examiner's opinions after a single examination over a treating physician," Dr. Kharitanova's opinion should have been accorded more weight. *See Syska*, 2021 WL 2190986, at 6 (citing *Cruz*, 912 F.2d at 13). The ALJ, moreover, must fulfill her affirmative duty to thoroughly examine and discuss Dr. Kharitanova's opinions in the intervening period since the initial assessment was completed in 2014. On remand, the ALJ is directed to explain in detail the factors required by the Second Circuit in *Burgess*, more thoroughly examine and develop Dr. Kharitanova's findings to date, and accord substantial weight to Dr. Kharitanova's opinions unless the ALJ identifies and explains any additional inconsistent evidence that warrants the ALJ's departure from the treating physician rule.

## CONCLUSION

The Commissioner's finding that plaintiff is not disabled as defined by the SSA is not supported by substantial evidence in the record because the ALJ failed to properly weigh

the opinions of the treating physicians, Dr. Flynn and Dr.
Kharitanova.  The court therefore grants plaintiff's motion for
judgment on the pleadings; denies defendant's cross-motion for
judgment on the pleadings; and remands this case for further
proceedings consistent with this Memorandum and Order.  The
Clerk of the Court is respectfully directed to close this case
and enter judgment in favor of plaintiff.

**SO ORDERED**.

DATED: July 12, 2021
       Brooklyn, New York

_____/s/_____
**HON. KIYO A. MATSUMOTO**
United States District Judge